**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No.  1:18-CV-2320-RM

LINDA HARLAS

      Plaintiff,

v.

THE BARN, LLC, a Colorado Limited Liability Company, M and R Enterprises, LLC, a
Colorado Limited Liability Company; Catherine Haigh, an individual

      Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND AMENDED PARTIAL**
**MOTION FOR SUMMARY JUDGMENT**

---

Defendants, The Barn LLC, M and R Enterprises, LLC and Catherine Haigh (collectively "Defendants"), by their attorneys at Kumpf Charsley & Hansen, LLC submits the following response to *Plaintiff's Second Amended Partial Motion for Summary Judgment* ("MSJ"):

**SUMMARY OF RESPONDENT'S ARGUMENT**

This is a case about a disgruntled former tenant of The Barn who leased retail space and shared a cash register with other tenant/merchants who now wishes for this court to order the commercial landlord (and others) to pay this disgruntled former tenant wages for the time she spent at the cash register selling her own merchandise and the merchandise of her fellow tenant/merchants.

1

Plaintiff, who filed this action in retaliation for being evicted from The Barn, presents the question of whether she is an "employee" of Defendants pursuant to 29 U.S.C §201 *et seq*, the Fair Labor Standards Act ("FLSA"), and C.R.S. §8-4-109 – 110, the Colorado Wage Claim Act ("CWCA"), during days when she operated one of three cash registers located within a commercial building commonly referred to as The Barn Antiques and Specialty Shops ("The Barn") selling, by her own admission, merchandise owned by Plaintiff and/or other tenant/merchants of The Barn LLC. She does not contend that she sells merchandise owned by Defendants[1]. Her argument rests solely on a "control" theory based on a Policy and Procedural Manual that she refuses to acknowledge was a tenant negotiated document incorporated into the tenants' lease as a result of the tenants' requests. In order to satisfy its tenants and in order to maintain its occupancy rate, the landlord accepted these terms and acquiesced to the tenants' Policy and Procedure Manuals. Plaintiff wrongly contends in her MSJ that there are no genuine disputes of material fact regarding her assertion that she is an employee of Defendants while she is operating one of three cash registers located in The Barn.

There are two primary reasons, among others, why there are genuine disputes of material fact that preclude entry of summary judgment. First, Plaintiff has failed to demonstrate that there are no genuine disputes of material fact that her activity – operating a cash register in The Barn LLC for, approximately four days a month for the last two years – is subject to the FLSA.

---

[1] She expressly stated in her Statement of Undisputed Facts #10, "The Barn LLC provides a commercial property management service to the businesses selling merchandise but <u>does not sell its own merchandise</u>. <u>Id</u> at 39:21-40:1; 49:21-25 (emphasis added). Defendants do not dispute this statement.

The FLSA, the CFRs and applicable caselaw require that in order to demonstrate individual coverage (historically referred to as "traditional coverage") that Plaintiff must be "engaged in commerce." Case law, and the CFRs that cite the applicable case law, provide that a cashier at a cash register in a local retail establishment is not subject to the FLSA. Plaintiff made no argument regarding whether the FSLA applies to her case. For "enterprise coverage" she must show that she is engaged in commerce, or handled goods placed in commerce and that The Barn's total earnings for business done is over $500,000/year. She has not provided any argument or facts that would support coverage under the enterprise theory. Without demonstrating that the FLSA applies under either an individual theory or enterprise theory, there is no federal question entitling her to relief in this Court. Because she failed to show a lack of factual dispute concerning whether the FLSA does apply, this court cannot enter summary judgment in Plaintiff's favor.

Secondly, Plaintiff is not Defendants' employee. Case law construing the application of the definition of an employee as set forth in the FLSA require that the alleged employee perform work that is predominantly for the employer's benefit. The CWCA also requires that, in order to be an employee, the work must benefit the alleged employer. That is not the case with respect to Plaintiff. Plaintiff acknowledged that when she occupies the cash register, she is selling merchandise that belongs to her business and/or the other tenant/merchant's businesses. This means that her labor at the cash register predominantly benefits her (and the other tenants, not Defendants). The Barn LLC is a commercial landlord who leased retail space to Plaintiff. The Barn's revenue comes from rent. Plaintiff's revenue comes from all sales activities that occur at The Barn, which are not services for Defendants. Plaintiff's actions predominantly benefit her as

she generates sales revenue for both herself and the other merchant/tenants. She is not Defendants'

employee.

Before addressing Plaintiff's MSJ in detail, the response herein is addressed to the sole

relief that Plaintiff requested in her MSJ.  On page 8 of 9, of the MSJ, Plaintiff requested as follows:

> For all of the above reasons, it would be appropriate for the Court to find Harlas
> was an employee covered by the FLSA.  Accordingly, Plaintiff Harlas respectfully
> requests that this Court rule in her favor regarding the facts and find as a matter of
> law summary judgment for her claims as propounded herein.

The only "claims" "propounded herein" appear to be a request for this court to find Plaintiff an

"employee" as a matter of law covered by the FLSA.  This appears to be more of a request for a

determination of a question of law.  Plaintiff did not address damages nor did she set forth

undisputed facts as to when and how much she "worked."  Defendants' do not understand or read

the MSJ to include a request for any other type of relief other than a legal determination that she

is an "employee" under the FLSA and CWCA.  It is based on this understanding that Defendants

provide the following response.

## FACTUAL HISTORY

Sometime during or after May of 2010, Plaintiff, d/b/a Sunday Afternoon Antiques

("Sunday Afternoon") leased retail space from The Barn LLC for a space in The Barn Antiques

and Specialty Shops ("The Barn"), which is an old lumber barn located next to the railroad tracks

in Castle Rock, Colorado (See OSUMF ## 1 and 2).  The Barn LLC rents The Barn from M and

R Enterprises LLC (See OSUMF #2).  The Barn LLC is a commercial landlord that leases space

in The Barn to tenants/merchants for a base rent amount (based on square footage), a percentage

of sales which includes operating costs (lights, heat, equipment, computer, software, etc.) and a

commission for The Barn LLC (See OSUMF # 80).  The tenants' lease term is on a month-to-month basis (See OSUMF # 77).  Lastly, as part of the lease arrangement, the tenants agree to operate one of three cash registers located in The Barn for a certain number of days (See OSUMF ## 76 –80).

The tenants market antiques and specialty items (e.g. rustic furniture, home décor, artwork, souvenir, jewelry, clothes, etc.) in their designated spaces located in The Barn, which is an open-air mall similar to an antique mall (See OSUMF # 87).  The tenants purchase, display and sell their inventory (See OSUMF # 87).

Each month the tenants meet at a social gathering and share with each other what is occurring with respect to each tenant's business (See OSUMF ## 51 and 79).  During this meeting the tenants will receive updates from The Barn LLC and the tenants will coordinate among themselves days in which they will take turns operating a cash register for the upcoming month. While the tenants are free to transact sales in their individual spaces at The Barn, the sharing of cash register duties (and other related functions such as opening The Barn, closing the cash register, counting cash and completing deposit slips) are all sales functions performed by the tenants for the benefit of the tenants (See OSUMF ## 79).  This sharing arrangement permits the tenants to conduct their operations at other locations, which several of them do, including Plaintiff, and to be free to travel and purchase merchandise at merchandise marts and similar trade shows (See OSUMF #87).

The tenants have made other arrangements with each other.  Beginning in 2012, some fourteen years after the current management took control of The Barn, the tenants began to request

policies and procedures to set forth expectations of one another (See OSUMF # 82). Tenants wrote suggested policies and procedures (See OSUMF # 82). Gary Traylor edited drafts of the policies and procedures (See OSUMF # 82). The Barn LLC, wishing to maintain a good relationship with its tenants, accepted the tenant's proposal and produced a finished draft of a Policy and Procedural Manual (PPM) (See OSUMF # 82). Drafts and amended drafts have been provided to the tenants who have reviewed and approved or recommended changes (See OSUMF # 82). Plaintiff participated in this process of reviewing drafts and emailed her approval to The Barn LLC. Plaintiff, like other tenants, made suggestions that made their way into the PPM (See OSUMF # 82). The Barn LLC and tenants view the PPM as "guidelines" (See OSUMF # 13, 14, 26, 29, 34, 36, 37 ). Hardly any enforcement action is taken with respect to the PPM (See OSUMF # 13, 14, 26, 29, 34, 36, 37 ).

Additional arrangements include tenants wishing for a tenant to serve as a shift lead during the business day as part of the tenants' sales activities (See OSUMF # 26). The tenants selected their own individuals to serve as shift leads (See OSUMF # 20, 36, 38, 39, 40, 41, 42, 84). The tenants created their own rules and forms for shift leads to follow (See OSUMF # 20, 36, 38, 39, 40, 41, 42, 84). The shift leads prepared end-of-the-day reports that The Barn LLC requested that it be provided (See OSUMF # 20, 36, 38, 39, 40, 41, 42, 84). Plaintiff volunteered to be a shift lead (See OSUMF # 20, 36, 38, 39, 40, 41, 42, 84). The primary responsibility of the shift lead was to supervise the other tenants' sales activities (See OSUMF # 20, 36, 38, 39, 40, 41, 42, 84). These services by the shift leads predominantly benefitted themselves and the tenants and were not supervised by The Barn LLC (See OSUMF # 20, 36, 38, 39, 40, 41, 42, 84).

The tenants do not provide any services in connection with The Barn LLC's commercial landlord business  (See OSUMF # 43, and 87).  The Barn LLC does not participate in the operation or management of the tenants (See OSUMF # 87).  The Barn and/or its independent contractor, Amy Smith, handle all landlord responsibilities (See OSUMF # 81).  The tenants have no involvement in these activities (See OSUMF # 81, 87).

Plaintiff was audited by the IRS for her tax filings for 2013/2014 tax years (See OSUMF # 83).  Plaintiff filed schedules C each year for Sunday Afternoon during the years she leased space at The Barn (See OSUMF # 83).  She claimed various business expenses (See OSUMF # 83).  The IRS challenged some of her business expenses for 2013/2014 (See OSUMF # 83).  She contacted Gary Traylor to help her (See OSUMF # 83).  Gary Traylor has, in the past, provided financial services for The Barn LLC, including assisting The Barn LLC with its taxes (See OSUMF # 83).  He still provides some financial services for The Barn LLC (See OSUMF # 83).  Plaintiff asked Gary Traylor to tell the IRS that she was not an employee of The Barn (See OSUMF # 83).  Mr. Traylor spoke with Plaintiff's IRS auditor and informed that Plaintiff was not an employee (See OSUMF # 83).  Plaintiff ultimately retained Tim West, Esq., CPA, to assist her with her audit (See OSUMF # 83).  Mr. West specifically assisted with an appeal of Plaintiff's audit.  Mr. West did not believe Plaintiff to be an employee of The Barn LLC (See OSUMF # 83).  Mr. West successfully appealed Plaintiff's audit results and the IRS withdrew its challenge to Plaintiff's business deductions (See OSUMF # 83).

In 2018, due to Plaintiff's conduct, The Barn LLC notified Plaintiff that it would not renew Plaintiff's month-to-month tenancy after June 30, 2018 (See OSUMF # 86).   Plaintiff had interfered with a new tenant and The Barn LLC lost that tenant (See OSUMF # 86).  Plaintiff was

a bully (See OSUMF # 86). She particularly focused her attacks on a newer tenant for whom she did not approve of his sexual orientation (See OSUMF # 86). She made trouble for him. (See OSUMF # 86). She contacted Catherine Haigh and falsely reported that this new tenant, Ken Carrick, was not helping customers. (See OSUMF # 86). She used slurs such as, "…you must have been in hog heaven in Las Vegas with all of those gay men" (See OSUMF # 86). She told him, with respect to a note book he carried that had a picture of a puppy dog, "that is so gay to carry that around" (See OSUMF # 86).

After her lease termination, Plaintiff alleged for the first time, that she was an "employee" She demanded wages (See OSUMF # 86). This was shocking as Plaintiff had total sales of $760,757.27 from 2015 to 2018 (See OSUMF # 86). She had never demanded wages from The Barn LLC in the past (See OSUMF # 86). Plaintiff claims that she was an "employee" of The Barn LLC for the time she spent in sales activities that primarily benefitted herself and the other tenants. Why should Defendants have to pay Plaintiff wages for her sales activities selling her merchandise and merchandise of the other tenants? The Barn declined her demand for wages as she was never an employee of The Barn (See OSUMF # 86). She sold her merchandise and made a substantial living doing so. She was a tenant and paid rent to The Barn.

## ARGUMENT

1.      **Summary Judgment**:

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(a). A fact is material if it "might affect the outcome of the suit" and genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). When applying summary judgment standard, the court must view all materials supplied in the light most favorable to the nonmoving party. See *Matsushita Elec., Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## 2.      Coverage under the FLSA:

The FLSA was enacted in 1938 as part of a broader effort to improve working conditions and regulate employment of vulnerable groups (e.g. recent immigrants, women and children*). Rui One Corporation v. City of Berkeley,* 371 F.3d 1137 (9th Cir. 2004). The purpose of the FLSA is to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. 202(a). *Douglas v. Xerox Business Services, LLC,* 875 F.3d 884, 887 (9th Cir. 2017). The minimum wage provision "protect[s] certain groups of the population from substandard wages" due to unequal bargaining power. *Brooklyn Sav. Bank v. ONeil*, 324 U.S. 697, 706 (1945); see also *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (the FLSA ensures that covered employees receive "[a] fair day's pay for a fair day's work" and avoids "the evil of overwork as well as underpay").

To establish a valid FLSA claim, Plaintiff must show: (1) that she was employed by the defendant(s); (2) that her work involved interstate activity; and (3) that she performed work for which she was under-compensated. 29, U.S.C. §§206(a), 207(a)(1); *Pruell v. Caritas Christi*, 678 F.3d 10 (1st Cir. 2012). These provisions of the FLSA apply to every employee, "who in any workweek is engaged in commerce or in the production of goods for commerce." Hence Plaintiff must show either that The Barn is a covered enterprise under the FLSA (enterprise coverage) or

that she is a covered employee under the FLSA (individual coverage).  See *Tony & Susan Alamo Found. V. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985).

<u>a.</u>     <u>Enterprise Coverage</u>:

Under the FLSA, an " '[e]nterprise engaged in commerce or in the production of commerce' means an enterprise that …has employees engaged in commerce or in the production of goods for commerce…; and …is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  29 U.S.C.  §203s(1)(A).  " 'Commerce' means trade, commerce, transportation, transmission, or communication among several States or between any State and any place outside thereof."  29 U.S.C. §203(b).

Plaintiff failed to establish that she is covered under the FLSA under an "enterprise" theory as she has failed to show (or even argue) that there are no genuine disputes of material fact that Defendants have employees engaged in commerce (Plaintiff is not engaged in commerce – see below under Individual Coverage), has employees engaged in the production of good for commerce or handles goods or materials that have been moved in commerce.

In her MSUMF #10, Plaintiff stated, "…The Barn LLC provides a commercial property management service to the businesses selling merchandise but does not sell its own merchandise." Plaintiff admitted that when she worked at the cash register, she sold her merchandise and merchandise owned by other tenants (See OSUMF ## 20 and 36).  By her MSUMF #10, Plaintiff has introduced a contradiction to her own argument thus showing that there are genuine disputes of material fact.  The acknowledgement that The Barn LLC does not sell its own merchandise is a

10

concession that The Barn does not have employees who are engaged in commerce, produce goods for commerce or have employees that handle good that have been shipped by commerce.  She has offered no undisputed facts on this issue regarding the other Defendants.

Secondly, Plaintiff did not demonstrate the second requirement to prove coverage under an enterprise theory – The Barn (or other Defendants) does business of $500,000 or more each year.

b.  Individual Coverage.

To demonstrate individual coverage under the FLSA, Plaintiff must show that she was Defendants' employee and that she was "engaged in commerce."  See 29 U.S.C. 206(a), 207(a). Under this theory of liability, it is not important whether the employer was engaged in interstate commerce, "[i]t is the work of the employee which is decisive."  *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943).

A determination of whether Defendants engaged "in commerce" requires a detailed look at Plaintiff's work and "is determined by practical considerations, not by technical conceptions." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955).  The U.S. Supreme Court has established that the phrase "engaged in commerce" under the FLSA, though not "coextensive with [Congress's] power to regulate commerce," should be "construed liberally to apply to the furthest reaches consistent with congressional direction."  *Mitchell v. Lublin, McGuaghy & Associates*, 358 U.S. 207, 211 (1959).  When the case involves an instrumentality or facility of interstate commerce, the test of whether a defendant is engaged in commerce "is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate

commerce as to be, in practical effect, a part of it, rather than isolated local activity. *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. at 429; See also *Mitchell v. Owen*, 292 F.2d 71, 77 (6th Cir. 1961).

The Supreme Court has held that a retailer who is at the end of the commerce stream is not "engaged in commerce." *McLeod, supra.* In *McLeod*, the Supreme Court stated, "We have held that this clause covered every employee in the "channels of interstate commerce….So handlers of goods for a wholesale who move them interstate on order …are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not." *Mcleod, supra* at 494. "To be an employee 'engaged in commerce' within the meaning of the FLSA, the employee 'must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or by (ii) regularly using the instrumentalities of interstate commerce in his work, e.g. regular and recurrent use of interstate telephone, telegraph, mails or travel." *Martinez v. Jade Palace*, 414 Fed.Appx. 243, 245 (11th Cir. 2011), citing *McLeod, supra* and 29 C.F.R. §§776.9- 776.12.  It was not intended that the FLSA's reach would be co-extensive with Congress's power to regulate commerce. See *Mitchell v. Lublin, McGaughy & Associates, supra*; *Kirschbaum Co. v. Walling*, 316 U.S. 571 (1942) and *McLeod, surpa.* Although there is no *de minimus* requirement the work itself must be "intertwined with the continuous stream of interstate commerce." See *Marshall v. Victoria Transp.* Co., 603 F.2d 1122, 1125 (5th Cir. 1979). "Congress intends to 'regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Reagor v. Okmulgee County Family Resource Center, Inc.*, 501 Fed.Appx. 805, 809 (10th Cir. 2010); citing *Thorne v. All Restoration Servs, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). A Plaintiff attempting to establish individual

coverage under the FLSA must demonstrate a direct and substantial involvement with interstate commerce. *Sobrinio v. Med. Ctr. Visitor's Lodge*, 474 F.3d 828, 829 (5th Cir. 2017).

> But, if an employee, as a regular and recurrent part of his duties, uses such instrumentalities in obtaining or communicating information or in sending or receiving written reports or messages, or orders for goods or services, or plans or other documents across State lines, he comes within the scope of the Act as an employee directly engaged in the work of 'communication' between the State and Places outside of the State.

29 C.F.R. §776.10(b).  Ultimately, "[t]he test under [the FLSA], to determine whether an employee is engaged in commerce is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be part of it." *McLeod*, 319 U.S. at 497.

Plaintiff failed to meet her burden with respect to whether she is covered under the "individual" (or "traditional coverage") and she did not meet her burden that she was covered under "enterprise coverage."  With respect to individual coverage, the United States Supreme Court has held, "…handlers of goods for a wholesaler who moves them interstate in order or to meet the needs of specified customers are in commerce, while those who handle goods after acquisition by a merchant for general local disposition are not." *Mcleod,* at 491 (1943). This principal still remains in effect.  See CFR §776.9.  Plaintiff sells her and other tenant's merchandise at The Barn and she is a "merchant for general local disposition" (See OSUMF ## 10, 20, 36 and 97.).  She has not provided any argument or provided facts that suggest otherwise.  Accordingly, Plaintiff has failed to meet her burden that she is an "employee" protected by the FLSA under an "individual" or "traditional" coverage theory.

3.      **Plaintiff is not an "employee" as defined by the FLSA and the CWCA**:

The FLSA defines an employer as one who acts directly or indirectly in the interest of an employer in relation to an employee.  29 U.S.C. §203(d).  An employee is defined as an individual who is employed by an employer.  29 U.S.C. §203(e).  Employ means to "suffer or permit to work."  29 U.S.C. §203(g).  "Employer" and "employee" are broadly defined.  See *Johnson v. Unified Gov't of Wyandotte Cnty*, 371 F.3d 723, 729 (10th Cir. 2004).  The term "work" is not defined in the Act.  The Supreme Court has defined this term as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Tenn. Coal, Iron and R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).  "The test for whether an employee's time constitutes working time is whether the time is spent predominantly for the employer's benefit or the employee's."  *United Transp. Union local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1116 (10th Cir. 1999) (quoting *Gilligan v. City of Emporia*, 986 F.2d 410, 412 (10th Cir. 1993).

In her MSUMF #10, Plaintiff stated that The Barn LLC does not sell merchandise.  Plaintiff acknowledged in her deposition that when she is engaging in sales activities (operations at the cash register and her volunteer tenant-created shift lead position) she is selling her merchandise and merchandise for the other tenants (See OSUMF # 87).  Therefore, she is predominantly working for the other tenants and her own benefit.  Pursuant to *Tenn. Coal, Iron and R. Co* and *United Transp. Union local 1745* tests, she is not an employee because her work is predominantly for her own benefit.  Moreover, she has not set forth any facts showing that she engages in landlord services on behalf of The Barn LLC.

Plaintiff relies upon the "economic realities" test and more specifically she places all of her bets on the control factor reasoning that the expectations of the tenant created PPM demonstrate "control" by Defendants.  The economic realities test is useful in determining whether a worker who provides services for another is an employee or an independent contract.  Based on Plaintiff's MSUMFs, that analysis is not applicable she admits that The Barn LLC does not sell merchandise.  She acknowledged that she sells her own merchandise and merchandise of other tenants when she engages in sales activities.  She has not shown that her work is predominantly for the benefit of Defendants.  Rather, she contends that PPM reflects that she is controlled when she is engaged in her sales activities.  As argued above, because she predominantly benefits her own business, and that of the other tenants, she does not "work" for The Barn LLC (or other Defendants) and does not provide services for The Barn.  She works for herself (as she claimed in her tax returns and audit) and benefits herself.

All of the cases cited by Plaintiff regarding the economic realities test related to the question of whether a worker is an employer or independent contractor, whether a party had sufficiently pled an FLSA claim and whether producers of goods for a company would be an employee under the FLSA.  None of the cases provided that the economic realities test applies in scenarios where a party has admitted that she is a tenant, sells her own merchandise, admits that the landlord does not sell merchandise all of which show that her "work" is predominantly for her benefit.  Even if the economic realities test applied, her claim still fails.

Under the economic realities test, a court measures the worker's economic dependence on the alleged employer by considering certain factors in the parties' relationship.  Factors considered under the economic realities test include: (1) The degree of the alleged employer's right to control

the manner in which the work is to be performed; (2) The alleged employee's opportunity for profit or loss depending on his  or her managerial skills; (3) The alleged employee's investment in equipment, materials or helpers required for such task; (4) Whether the service rendered requires a special skill; and (5) Whether the services rendered is in integral part of the alleged employer's business.

No one factor is determinative of the issue; rather, courts consider whether the circumstances as a whole show the worker to be "dependent upon the business which it serves." *Donvan v. DialAmerica Mktg, Inc*. 757 F.2d 1376, 1382 (3d Cir. 1985).

**(1) The degree of the alleged employer's right to control the manner in which the work is to be performed;**

In this case, the work performed is Plaintiff selling her own merchandise and/or merchandise of other tenants (See OSUMF # 87).  This work is predominantly for her and the other tenant's benefit.  She does not perform "work" for The Barn LLC (See OSUMF ## 43 and 87).  She is not performing services for The Barn LLC like the parties to the cases she cited.  In those cases, a party is providing services for another and the courts in those cases wrestled with whether the party providing services was an employee or independent contractor.

The PPM, upon which she relies upon heavily, is a collaborative product of Plaintiff and the other tenants (See OSUMF # 82).  The Barn LLC testified that it views the PPM as "guidelines" (See OSUMF # 13, 14, 26, 29, 34, 36, 37 ).  Amy Smith, another tenant, testified that the PPM is viewed as guidelines (See OSUMF # 13, 14, 26, 29, 34, 36, 37 ).  According to Ms. Smith, she is not aware of any sanctions except for some fines imposed because Plaintiff would not place

information on her Facebook page – which has nothing to do with operating the cash register (See OSUMF # 13, 14, 26, 29, 34, 36, 37).  In its deposition, The Barn acknowledged that tenants could decline taking turns at the cash register and have their own register in their individual spaces. Plaintiff acknowledged in her deposition that the PPM does not prohibit her having her own cash register (See OSUMF # 59).

The Barn LLC acquiesced to the PPM to appease its tenants (See OSUMF # 82).  For the fourteen years prior to the genesis of the PPM, The Barn LLC operated without a PPM (See OSUMF # 82).  A PPM is not necessary to The Barn LLC's business (See OSUMF # 82).

Harlas was not controlled by the PPM.  She is a month-to-month tenant who had the opportunity to negotiate the PPM on her own behalf.  This is evidence by her email in 2015 stating that she approved changes to the PPM and by her later email requesting a "no-check" policy ((See OSUMF #82).  Each month when she paid her rent, she re-upped her tenancy for an additional month knowing that the PPM was part of her lease terms, which she had participated in negotiating. Not once did she raise an objection in eight years to the PPM or claim that she was an employee. The only time she ever raised an issue with the PPM is when she was evicted due to her contentious behavior.  Only after that did she claim that the PPM "controlled" her.

### (2) The alleged employee's opportunity for profit or loss depending on his  or her managerial skills;

Plaintiff was a tenant and did not have any opportunity for profit or loss in The Barn LLC's business as a result of her sales activities.  She did not provide services to The Barn LLC.  The Barn LLC did not participate in operating Plaintiff's business.  Plaintiff's profit and/or loss was

17

strictly a function of how her business performed, which was strictly up to her.  Her sales activities predominantly benefitted herself and the other tenants – not The Barn LLC.  The Barn LLC's income derived from rent, regardless of the type of business pursued by the tenant.

### (3) The alleged employee's investment in equipment, materials or helpers required for such task;

Plaintiff, as all other tenants, paid operating fees which provided for a computer, software, lights, heat, etc.  Plaintiff purchased her own merchandise and sold her own merchandise (See OSUMF # 20).  She was free to purchase and utilize her own cash register (See OSUMF # 59).  She chose to participate with other tenants in taking turns at the cash register to sell her and the other tenants' goods.

### (4) Whether the service rendered requires a special skill;

The service Plaintiff rendered was to hers and the other tenants' customers.  She sold her and the other tenants' merchandise.  She did not provide services to The Barn LLC (or other Defendants).

### (5) Whether the services rendered is in integral part of the alleged employer's business.

Plaintiff's sales activities were not an integral part of The Barn LLC's business (or other Defendants' business).  The Barn LLC is a commercial landlord.  Plaintiff is a retailer who leases space from The Barn LLC and sells her own merchandise.  By taking turns with other tenants at the cash register, Plaintiff predominantly benefitted herself and the other tenants.  In selling her own merchandise and the merchandise of the other tenants, Plaintiff was not performing an integral

part of The Barn LLC's business. The Barn LLC is a commercial landlord.  It leases retail space and collects rent.

Lastly, Plaintiff herself argued before the IRS that she was not an employee of The Barn when defending certain business deductions that she claimed on her Schedule C (See OSUMF # 59).  Plaintiff enlisted Gary Traylor to share with the IRS that she was not an employee of The Barn LLC.  Her tax audit appeal resulted in her retaining her business deductions for her activities at The Barn LLC.  Plaintiff has never requested wages from Defendants until after her eviction. She was a tenant for eight years and not once did she ask Defendants for wages.  Her demand for wages was an insincere attempt at retaliation for being evicted.  The fact that she has reported self-employment income by filing schedules C with her tax returns for the last eight years, combined with the facts that she fought the IRS to retain her business deductions for her time at The Barn make clear that Plaintiff is not an employee and never considered herself an employee of Defendants until after she was angered by being evicted.

4.      Plaintiff is not an "employee" under the CWCA:

C.R.S. §8-4-101(4) defines an employee as "any person…performing labor or services for the benefit of an employer …."  C.R.S. §8-4-101(5) defines an "employer" as "every person, firm, partnership, association, corporation….employing any person in Colorado.  As argued above, Plaintiff provided services for her business and the other tenants not Defendants.

**CONCLUSION**

The purpose of the FLSA is to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of

workers." The FLSA covers employees who can demonstrate individual or enterprise coverage under the FLSA. An employ is one who provides services for another that predominantly benefits the other. Plaintiff is a merchant who disposes of her goods for local disposition. She does not provide services for Defendants; rather, she provides services for herself and the other merchants when she is engaged in sales activity at The Barn. The Barn LLC is a commercial landlord who leases space to retailers. Defendants are not employers of the tenants as the tenants' efforts predominantly benefit themselves. Plaintiff, prior to her eviction, had gross sales of over $700,000 for the last four years she was at The Barn. The remedies and purposes of the FLSA are not for businesses like Plaintiff. For the same reasons she is not an employee under the FLSA, she is not an employee under the CWCA. Plaintiff has failed to meet her burden to show there is no genuine dispute of material fact regarding whether she is covered by the FLSA and whether she is an employee pursuant to the FLSA and CWCA. Defendants request that this court deny Plaintiff's request for summary judgment.

Respectfully submitted this 18th day of October 2019.

*/s/ Robert E. Wells*
Robert E. Wells, Esq.
Kumpf Charsley & Hansen, LLC
9565 S. Kingston Ct., Suite 100
Englewood, CO 80112
Telephone: (720) 473-8004
Email: rwells@kch-law.com
Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

collin@earlandearl.com
Collin Earl, Esq.
Earl and Earl, PLLC
1259 Lake Plaza Dr, #230
Colorado Springs, CO 80906

*s/ Tamara M. Pray*_____
Tamara M. Pray, Paralegal
 Kumpf Charsley & Hansen, LLC
9565 S. Kingston Ct., Suite 100
Englewood, CO 80112
Telephone: (720) 473-8000
 Email: tpray@kch-law.com
Attorneys for Defendants